UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES ARTHUR ROAT,　　　　　　　　　　Case No. 2:18-cv-00182

　　　　　Plaintiff,　　　　　　　　　　　　　Hon. Paul L. Maloney
　　　　　　　　　　　　　　　　　　　　　　U.S. District Judge
v.

COMMISSIONER OF SOCIAL SECURITY,

　　　　　Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

In 2004, Plaintiff James Arthur Roat sustained knee and back injuries while working as a pipe layer. In 2015, Roat filed an application for disability insurance benefits (DIB) and supplemental security insurance (SSI), alleging that he became disabled on January 23, 2004.

The Social Security Administration rejected Roat's claim and he requested a hearing. An Administrative Law Judge (ALJ) heard Roat's case and found that Roat suffered from several severe impairments. But the ALJ found that his impairments or combination of impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. part 404, Subpart P, Appendix 1. The ALJ then determined Roat's residual functional capacity (RFC) and found that Roat could perform jobs that existed in significant numbers in the national economy. The ALJ, therefore, concluded that Roat was not disabled under the Social Security Act. The Appeals Council denied Roat's request for review.

On appeal, Roat argues that the ALJ (1) erred at step three by failing to consider whether Roat's back issues met or equaled Listing 1.04(A), *Disorders of the spine*; and (2) erred at step five by failing to include manipulative and reaching limitations in posing questions to the vocational expert. Upon review of the record, I respectfully recommend that the Court reverse the decision of the ALJ and remand this matter for further consideration.

**II. Standard of Review**

Review of an ALJ's decision is limited to two issues: (1) "whether the ALJ applied the correct legal standards," and (2) "whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); 42 U.S.C. § 405(g). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. 42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole, and take into account whatever evidence in the

record fairly detracts from its weight. *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984) (citations omitted). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

### III. Procedural Posture

Roat applied for Social Security Disability Insurance Benefits and Supplemental Security Income benefits on March 20, 2015, alleging a disability date of January 23, 2004. (ECF No. 9-5, PageID.222-230.) On October 13, 2015, Roat's application was denied (ECF No. 9-4, PageID.146, 163), and he requested an administrative hearing before an ALJ. (*Id.*, PageID.180.) On August 9, 2017, the ALJ held a hearing where Roat was represented by counsel. (ECF No. 9-2, PageID.64-105.)

On March 27, 2018, the ALJ affirmed the Social Security Administration's initial denial of benefits. (*Id.*, PageID.44-56.) The ALJ's decision became the agency's final decision when the Appeals Council denied Roat's request for review. (*Id.*, PageID.32-35.) Roat then filed this appeal, seeking judicial review of the agency's final decision denying his request for disability benefits.

### IV. Background

Roat was born on March 24, 1975. (ECF No. 9-5, PageID.256.) Roat has a high school education with past work experience as a carpenter and a pipe layer. (ECF No. 9-2, PageID.73.) While performing pipe layer duties in 2004, Roat sustained knee and back injuries when he was involved in a cave-in. (*Id.*, PageID.75.) Roat worked on cell towers for about two months in 2011, but was fired because he was unable to perform the work. (*Id.*, PageID.78-79.)

Roat stated that he continues to drive, fish, and hunt, but not at the same level as before his injuries. (*Id.*, PageID.84.) In 2015, while Roat was cutting a tree down, a branch fell on his head. As a result, he vomited and had a headache. (*Id.*, PageID.86.) He was examined by Dr. Coccia for a concussion and given a CT scan. (*Id.*)

Roat was able to lay carpet before he had neck surgery. (*Id.*, PageID.90.) At the time of the hearing, he stated that he tried to exercise in his yard by taking his dogs for a walk during the day and by stretching his legs and back. (*Id.*, PageID.91.) He also cuts his lawn. (*Id.*) Roat stated that he had to be careful not to overexert himself or he might be unable to walk for a month. (*Id.*) Roat sleeps in a recliner or on a couch and spends about 19 hours a day either in the recliner or on the couch. (*Id.*, PageID.94-5.)

Roat explained that due to numbness caused by carpel tunnel syndrome he loses his grip and drops things. (*Id.*, PageID.95.) He stated that he can reach

4

overhead, but not without pain. (*Id.*, PageID.96.) He can use his fingers to manipulate smaller objects such as bottle caps or to pick up a dime on a table. (*Id.*)

## V. ALJ's Decision

Generally, an ALJ must employ a five-step sequential analysis to determine whether the claimant is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520; *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). At step one, the ALJ determines whether the claimant can still perform substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant's impairments are considered "severe." 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments meet or equal a listing in 20 C.F.R. part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Before proceeding to step four, the ALJ determines the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). At step four, the ALJ determines whether the claimant has the RFC to still perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At step five, after considering the claimant's RFC, age, education, and work experience, the ALJ determines whether a significant number of other jobs exist in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines the claimant is not disabled under any step, the analysis ceases and the claimant is declared as not disabled. 20 C.F.R § 404.1520(a)(4).

The claimant has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past

relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

In his decision, the ALJ noted that Roat filed a prior application for disability benefits. Roat's prior application was denied on March 4, 2015. (ECF No. 9-2, PageID.45.) After Roat filed this application, the ALJ determined that Roat did not present any new and material evidence regarding his alleged disability for the period up to March 4, 2015. (*Id.*) The ALJ found that *res judicata* applied to the Commissioner's March 4, 2015 final decision and concluded that Roat was not disabled on or before that date. (*Id.*) The ALJ determined that Roat was not entitled to disability benefits because he was only insured through December 31, 2008. (*Id.*) Accordingly, the ALJ dismissed Roat's claim for disability and disability insurance benefits and considered whether Roat was entitled to supplemental social security income beginning on March 5, 2015. (*Id.*) Roat does not contest this portion of the ALJ's decision. (*Id.*)

Addressing step one, the ALJ found that Roat had not engaged in substantial gainful activity since March 5, 2015. (*Id.*, PageID.47.)

At step two, the ALJ found that Roat had the following severe impairments: degenerative disc disease, hernias, dermatitis, carpal tunnel syndrome, hearing loss, dysfunction of major joints, affective disorder, personality disorder, and anxiety disorder. (*Id.*)

6

At step three, the ALJ determined that Roat did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. part 404, Subpart P, Appendix 1. In making this conclusion, the ALJ found that Roat's musculoskeletal impairments did not meet the listings in section 1.00 "because the evidence establishes neither (1) an inability to ambulate effectively on a sustained basis, nor (2) an inability to perform fine and gross movements." (*Id.*, PageID.48.) In addition, the ALJ determined that Roat's hearing loss did not meet the listing under 2.10, his carpal tunnel syndrome did not meet the listing under 11.00 because he was not precluded from using his hands for work-like activities, and his mental impairments did not meet the criteria under listings 12.04 and 12.06. (*Id.*, PageID.48-50.)

Prior to step four, the ALJ determined Roat's RFC. The ALJ determined that Roat had the RFC to perform light work with the following limitations:

> except the claimant can never climb ladders, ropes or scaffolds; frequently climb of ramps or stairs; and occasionally balance, stoop, crouch, kneel, or crawl. The claimant must avoid concentrated exposure to extreme heat, wetness or humidity, excessive noise, irritants such as fumes, odors, dust and gasses, unprotected heights, and the use of moving machinery. He is limited to unskilled work performing simple, routine and repetitive tasks, with only occasional interaction with the public, no fast-paced production work (end of day quotes are permitted), and must allowed to be off task 10% of the workday in addition to his regular breaks.

(*Id.*, PageID.51.)

This section of the ALJ's decision included an extended discussion of Roat's activity level and prior medical treatment. The ALJ noted that Roat had a cervical diskectomy and fusion surgery on January 2, 2014, and decompressive laminectomy

7

for an L5-S1 disc herniation surgery on February 12, 2015. (*Id.*, PageID.52.) The ALJ explained that treatment notes consistently show that Roat presents with no acute distress, but on some occasions he presents with mild diminished light touch sensitivity in his extremities. (*Id.*) The ALJ noted that, by August 2015, Roat reported that his symptoms were well managed with Norco pain medication without side effects and he felt like he could work. (*Id.*)

The ALJ noted that, in October of 2015, Roat fell on his right shoulder. (*Id.*) Roat received shoulder manipulation treatment while under anesthesia in January of 2016. (*Id.*) The ALJ's decision notes that, on January 27, 2016, Roat reported that he felt great. (*Id.*, PageID.53.) Roat said he was still able to hunt, fish, play basketball, do yard work, and care for his animals, but had some pain limitations. (*Id.*) By June of 2016, Roat reported that Norco was no longer working effectively. (*Id.*) Roat switched to Prednisone and reported no pain. (*Id.*) During November of 2016, Roat fell again on his right shoulder, but did not follow up with his orthopedic surgeon. (*Id.*)

The ALJ also noted that Roat was diagnosed with carpel tunnel syndrome in April of 2015, but his examination was normal. (*Id.*) Roat reported numbness in his hands after repetitive use. (*Id.*) Nerve conduction studies in June of 2015 verified carpel tunnel syndrome with the left side worse than the right. (*Id.*) Roat underwent carpel tunnel release procedures that gave him marked improvement. (*Id.*) The ALJ found that a light exertional work limitation would accommodate Roat's carpel tunnel impairment. (*Id.*)

8

The ALJ commented on the Cassie Sundberg's opinion that Roat could perform light work, but could not sustain postural requirements for full time employment. The ALJ accorded this opinion minimal weight for several reasons. (*Id.*) First, the ALJ noted that Sundberg merely completed a check-box form without giving any examples of objective findings and circled the most limiting choices on the form without any explanation. (*Id.*) Second, the ALJ concluded that this form was completed based upon Roat's subjective statements. (*Id.*) The ALJ also noted that Sundberg indicated that deference should be given to Roat's orthopedic surgeon's opinion. (*Id.*) The ALJ further found that Ms. Sundberg's opinion that Roat suffers great pain and is bedridden due to his impairments is not supported by his medical examinations and treatment notes. (*Id.*) Accordingly, Ms. Sundberg's opinion was "accorded little probative value." (*Id.*)

The ALJ noted that Roat's physical limitations caused reactive depression, irritability, and anxiety. (*Id.*) The ALJ concluded that Roat's mental health treatment record is inconsistent with a finding of mental disability and establishes that he is capable of performing at least unskilled work. (*Id.*, PageID.54.)

At steps four and five, the ALJ, found that Roat could not perform past relevant work as a pipe layer (*id.*, PageID.55), but that there were jobs available in significant numbers in the national economy that Roat could perform (*Id.*, PageID.55-6). The latter conclusion, which is the ALJ's step five conclusion, was based upon Roat's age, education, work experience, and RFC to perform light work. The available jobs identified by the ALJ, based on testimony by the vocational expert, were mail clerk

(46,000 positions), office helper (37,000 positions), and checker I (40,000 positions). (*Id.*, PageID.56.)

Accordingly, the ALJ found that "[t]he claimant has not been under a disability, as defined in the Social Security Act, from January 23, 2004, through the date of this decision (20 CFR 416.920(g))," which was March 27, 2018. (*Id.*)

## VI. Discussion

Roat raises two errors for review by this Court: (1) whether the ALJ erred at step three by failing to consider whether Roat's back issues met or equaled Listing 1.04(A), *Disorders of the spine*; and (2) whether the ALJ erred at step five by failing to include manipulative and reaching limitations in posing questions to the vocational expert.

### A. Medical Listing 1.04(A)

Roat claims that the ALJ erred at step three by failing to consider listing 1.04(A). Under step three of the five-step sequential evaluation process, the ALJ determines whether the claimant "is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations," at which time the claimant would be found disabled without having to consider vocational factors. *Newsome v. Comm'r of Soc. Sec.*, 528 F. Supp. 2d 733, 738 (W.D. Mich. 2007) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 538 (6th Cir. 2007)). "Because satisfying the listings yields an automatic determination of disability . . . the evidentiary standards for a presumptive disability under the listings are more strenuous than for

10

claims that proceed through the entire five-step evaluation." *Peterson v. Comm'r of Soc. Sec.,* 552 F. App'x. 533, 539 (6th Cir. 2014).

The ALJ should consider a medical listing if the record raises a substantial question as to whether the claimant could qualify as disabled under the listing. *Sheeks v. Comm'r of Soc. Sec.,* 544 F. App'x 639, 641 (6th Cir. 2013), citing *Abbot v. Sullivan,* 905 F.2d 918, 925 (6th Cir. 1990). It is the claimant's burden to establish that his impairments meet or equal a listing. *Evans v. Sec'y of Health & Human Servs.,* 820 F.2d 161, 164 (6th Cir. 1987). Where the ALJ makes findings elsewhere in the decision supporting the conclusion that the claimant did not meet a listing, the Court may affirm the decision because an ALJ need not "spell out every fact a second time." *Bledsoe v. Barnhart,* 165 F. App'x 408, 411 (6th Cir. 2006). The ALJ's step three findings may be upheld where there are "factual findings elsewhere in his decision to support his conclusion." *Forrest v. Comm'r of Soc. Sec.,* 591 F. App'x 359, 366 (6th Cir. 2014). An impairment that meets only some of the criteria set forth in a listing does not satisfy the claimant's burden to demonstrate disability under that listing. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990).

Social Security Listing 1.04(A) states:

> **1.04 *Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

"In order for a claimant's condition to equate with a listed impairment, the claimant's condition must manifest all of the specified medical criteria for such impairment." *Lawson v. Comm'r of Soc. Sec.*, 192 Fed. Appx. 521, 529 (6th Cir. 2006), citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Therefore, to satisfy Listing 1.04(A), Roat must show evidence of ***nerve root compression*** that is characterized by:

(1) neuro-anatomic distribution of pain,

(2) limitation of motion of the spine,

(3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory reflex or loss, and

(4) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

The ALJ wrote the following regarding whether Roat's musculoskeletal impairments met or equaled a listing:

> Specifically, the undersigned has considered the claimant's musculoskeletal impairments under listings in section 1.00. However, the claimant's condition does not meet the severity requirements of these Listings, because the evidence establishes neither (1) an inability to ambulate effectively on a sustained basis, nor (2) an inability to perform fine and gross movements.

(ECF No. 9-2, PageID.48.)  The ALJ did not specifically address listing 1.04(A).

The Commissioner correctly notes that the claimant has the burden of showing that his impairment or impairments meet or equal a listing and argues that the ALJ need not to articulate the evidence supporting his step three finding.  The Commissioner further invites this Court to consider the medical evidence that the ALJ failed to consider and determine that Roat cannot meet the criteria in listing

12

1.04(A). The Commissioner does not, however, analyze whether a finding in favor of the claimant on listing 1.00 is a prerequisite to a finding of equivalency on a sub-category, such as listing 1.04(A).

In the opinion of the undersigned, this case requires remand so the ALJ may consider whether Roat's impairments meet or equal the criteria in listing 1.04(A) for two reasons. First, the ALJ's decision leads to the conclusion that he viewed a finding that the claimant met the requirements of listing 1.00 as a prerequisite to an equivalency finding based on listing 1.04(A). In doing so, the ALJ may have applied an incorrect legal standard. The law on this point is undecided. *See Kelley v. Astrue*, No. 3:10-CV-01041, 2012 WL 3945533, at *9 (M.D. Tenn. Sept. 10, 2012) (stating that "[b]ecause the record did not contain evidence that Plaintiff met any of the requirements under Listing 1.00, Plaintiff cannot not meet the requirements of Listing 1.04, as Listing 1.00 provides the threshold requirements necessary to meet any of the "Musculoskeletal System" disorders"), *report and recommendation adopted*, No. 3:10-CV-01041, 2012 WL 4482061 (M.D. Tenn. Sept. 27, 2012); *compare with Alban v. Astrue*, No. 3:11 CV 1119 CSH, 2012 WL 6728055, at *4 n.10 (D. Conn. Dec. 6, 2012), (declining to adopt defendant's assertion that plaintiff cannot establish Listing 1.04(A) without establishing that an inability to ambulate effectively), *report and recommendation adopted*, No. 3:11-CV-1119 CSH, 2012 WL 6728050 (D. Conn. Dec. 28, 2012).

Second, despite the evidence that Roat has engaged in physical activities that indicate that his impairments are not as severe as he claims, the medical evidence

raises a substantial question of medical equivalency that meets listing 1.04(A).  For example, an MRI taken on November 18, 2011, of Roat's spine, revealed degenerative disk changes at C5-6 and C6-7.  (ECF No. 9-7, PageID.526.)  Disk bulging at C5-6 "produce[s] moderate to severe right neural foraminal encroachment."  (*Id.*, PageID.526-527.) At C6-7 disk herniation "produces severe left side central canal stenosis **impinging** upon and *compressing the cord* on the left.  There is associated moderate to severe left neural foraminal encroachment."  (*Id.*, PageID.527) (emphasis added).

A March 21, 2014, MRI of the lumber spine showed mild progression of degenerative disc disease since the 2012 examination, L5-S1 **compression** of the left S1 sleeve with mild **compression** of the right S1 sleeve.   (ECF No. 9-7, PageID.410-411.)

A January 6, 2015, MRI of Roat's lumber spine showed a "significant mass effect on the exiting left S1 nerve root" at L4-L5. (ECF No. 9-8, PageID.734.)

On February 12, 2015, Roat underwent surgery that included an L5-S1 decompressive laminectomy with total facetectomy on the left side, followed by an L5-S1 posterior lumber interbody fusion.  (ECF No. 9-7, PageID.399-400.)  Dr. Coccia performed the surgery to alleviate Roat's back and leg pain.  (*Id.*)

A December 16, 2016, MRI of Roat's cervical spine showed a right C5-6 foraminal disc herniation "with **potential compromise** of the intraforaminal right L5 **nerve**."  (ECF No. 9-8, PageID.724) (emphasis added).

14

A March 14, 2017, MRI taken after Roat's decompressive laminectomy transpedicular fusion surgery was mostly normal. (*Id.*, PageID.721-722.) It was noted that the January 6, 2015 MRI, revealed a large obstruction causing mass effect on the S1 nerve root. (*Id.*, PageID.721.) After L5-S1 fusion surgery, there was "**no evidence [of an] enhancing mass**." (*Id*) (emphasis added). There was "no recurrent disc. no epidural scarring. Normal alignment and curvature status post transpedicular fusion at the L4-L5 level." (*Id.*, PageID.722.) The thoracic spine was normal. (*Id.*, PageID.723.)

In the opinion of the undersigned, the ALJ erred by failing to consider listing 1.04(A). Whether Roat's medical evidence shows that he can meet or equal listing 1.04(A) was not decided by the ALJ. The ALJ never fully considered the criteria under listing 1.04(A). It is the opinion of the undersigned, that this Court should decline the Commissioner's invitation to consider and weigh the medical evidence and make the first impression determination of whether Roat meets or equals listing 1.04(A). In the opinion of the undersigned, the Commissioner should first make the determination of whether the medical evidence of record can support a disability finding under listing 1.04(A).

**VII. Recommendation**

It is respectfully recommended that the Court reverse the decision of the ALJ and remand this case for consideration of whether Roat meets or equals listing 1.04(A). On remand, the ALJ should also consider whether Roat's carpel tunnel syndrome and shoulder pain require further limitations in Roat's RFC determination.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ *Maarten Vermaat*
Maarten Vermaat
U. S. MAGISTRATE JUDGE

Dated: December 30, 2019